[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
NOVEMBER 3, 2011
JOHN LEY
CLERK

No. 11-11317
Non-Argument Calendar
_____

D.C. Docket No. 1:10-cv-21418-KMM

RAFAEL VERGARA HERMOSILLA,

Plaintiff - Appellant,

versus

THE COCA-COLA COMPANY,
a Delaware corporation,

Defendant - Appellee.

_____

Appeal from the United States District Court
for the Southern District of Florida
_____

(November 3, 2011)

Before WILSON, PRYOR and BLACK, Circuit Judges.

PER CURIAM:

Rafael Vergara Hermosilla appeals the summary judgment in favor of the

Coca-Cola Company and against his complaint of copyright infringement.

Vergara argued that Coca-Cola infringed on his copyright interest in his Spanish adaptation of a song that Coca-Cola used in its advertising. The district court ruled that Vergara had assigned his copyright interest in the adaptation to Universal Music Latin America, which in turn had assigned its rights to the adaptation to Coca-Cola. We affirm.

As part of its advertising campaign for the 2010 FIFA World Cup soccer tournament, Coca-Cola enlisted recording artist K'naan to create a new version of his song "Wavin' Flag." Coca-Cola had the new version, the "Celebration Mix," sung in different languages by local artists and K'naan. To create the Celebration Mix, Coca-Cola obtained rights from the owners of both the sound recording and the musical composition of "Wavin' Flag." "The sound recording is the aggregation of sounds captured in the recording while the song or tangible medium of expression embodied in the recording is the musical composition." Saregama India Ltd. v. Mosley, 635 F.3d 1284, 1289 n.18 (11th Cir. 2011).

Coca-Cola contacted Jose Puig of Universal Music Latin America to produce a Spanish version of the Celebration Mix. Puig sought advice from Rafael Artero of Universal Music Publishing Group to select a songwriter. Artero recommended that Puig employ Vergara, who had a contract with Universal Group.

In November 2009, Puig and Artero called Vergara, who agreed to adapt the song. According to Vergara, Artero said he would "carry out the normal procedure as he would in any song in order to claim [Vergara's] rights and register the work." Vergara knew that he would have to negotiate to obtain an interest in the adaptation, but Vergara had "written hundreds of songs" and adapted one song, and "no publishing house or author [had] ever denied [him] that right." In the past, "whenever Vergara [had] requested . . . rights there [had] always been a dialogue with the other party and an agreement . . . reached without any problem."

In one evening, Vergara adapted the Celebration Mix into Spanish. Vergara sent to Puig the lyrics and a "demo" musical recording that combined the lyrics with the Celebration Mix. Coca-Cola approved Vergara's adaptation, and Vergara produced the recording of the Spanish Celebration Mix. Vergara delivered his finished product to Puig in December 2009.

Vergara sent the Universal Group an invoice for $6,000 for his production work, and in January 2010, Universal Group began negotiating with the owners of the musical composition to obtain an "adapter's share" of the profits for Vergara. In February 2010, iTunes Mexico began selling the Spanish Celebration Mix, but iTunes did not credit Vergara for the Spanish lyrics and adaptation. When the owners of the musical composition refused to give an adapter's share to Vergara,

he threatened to file a lawsuit to enforce his copyright interest in the adaptation.

Puig and Vergara negotiated a settlement. On March 4, 2010, Vergara emailed Puig and Artero "to repeat and reaffirm the terms [that Vergara and Puig had] discussed." Vergara stated that "a door [had] always [been] left open for requesting from the original authors a percentage for the adaptation" and had he known "that such a possibility did not exist," he "would have never considered making said adaptation." Vergara stated that his "only demand" was that his "name as an adapter . . . [was listed] every time the name of any composer of [the Spanish Celebration Mix] [was] shown, . . . along with . . . production credits." Vergara told Puig to "consider [the adaptation] a Work for Hire with no economic compensation" other than "one dollar." On March 5, 2010, Puig emailed Vergara that he could "count on the credits on the track" and that Puig was "resending [Vergara] the contract."

On March 4, 2010, Universal Group assigned its copyright interests in the adaptation to Coca-Cola. In the contract, Universal stated that it had acquired the copyright from Vergara. The second clause of the contract provided that "Universal . . . assign[ed] and transfer[red] [to Coca-Cola] title to the musical work in Spanish of Wavin' Flag, produced [by] Mr. Rafael Vergara, who in turn assigned the copyrights to such musical arrangement to Universal."

4

Puig mailed Vergara contracts that did not comply with Vergara's requests for credit for his work. On March 8, 2010, Vergara sent to Puig an email stating that Vergara was "revok[ing]" his "proposal" of March 4, 2010. Vergara stated that his "proposal was clear and it was just that, a proposal." That same day, Puig responded that he had failed to "review the contracts" and he would do so "right away and make any necessary changes."

In May 2010, Vergara filed a complaint for injunctive relief and monetary damages against Coca-Cola. The district court temporarily enjoined Coca-Cola from advertising, selling, distributing, or disseminating the Spanish Celebration Mix unless it attributed credit to Vergara as the adapter of the song. This Court held that the district court did not abuse its discretion by issuing the preliminary injunction. Hermosilla v. Coca-Cola Co., No. 10-12894 (11th Cir. Mar. 25, 2011).

The district court later granted a summary judgment in favor of Coca-Cola. The district court ruled that Vergara entered a contract to assign his copyright interest in his adaptation to Universal. The district court found that "Vergara agreed to sell his rights to the lyrics for a dollar so long as he receive[d] credit for his contribution" and Puig accepted that condition of sale on behalf of Universal.

The district court did not err by granting summary judgment in favor of Coca-Cola because the record establishes without dispute that Vergara assigned

5

his copyright interest to Universal. Under Florida law, parties enter a contract when "there was a definite proposal by one party which was unconditionally accepted by the other." Webster Lumber Co. v. Lincoln, 115 So. 498, 504 (Fla. 1927). To make this determination, a reviewing court must "place itself in the situation of the parties, and from a consideration of the surrounding circumstances, the occasion, and apparent object of the parties, . . . determine the meaning and intent of the language employed." Underwood v. Underwood, 64 So. 2d 281, 288 (Fla. 1953) (internal quotation marks omitted). Vergara stated in his email on March 4, 2009, that his "only demand" to assign his copyright interest was that he receive credit as the adapter and producer. Puig "unconditionally accepted" that condition in his email on March 5, 2009, in which he told Vergara to "count on the credits on the track." Puig's acceptance on behalf of Universal was effective to create a contract with Vergara because it "match[ed] the terms of [his] offer." Gillespie v. Bodkin, 902 So. 2d 849, 850 (Fla. Dist. Ct. App. 2005). The two emails were "so connected with each other that they may be fairly said to constitute . . . a complete contract." Webster, 115 So. at 502.

That Vergara and Universal intended to execute a "subsequent formal, written contract, does not denote that they did not intend to be bound immediately by their . . . written negotiations." Lifecare Int'l, Inc. v. CD Med., Inc., 68 F.3d

6

429, 436 (11th Cir. 1995). Their emails do not contain any language from which "conflicting legal inferences . . . could be drawn regarding the expressed intent of the parties so as to alter the legal effect of the undisputed facts of [an] offer [by Vergara], acceptance, and communication of that acceptance" by Puig. Citizens Bank of Perry v. Harlie Lynch Constr. Co., 426 So. 2d 52, 54 (Fla. Dist. Ct. App. 1983). Vergara argues, for the first time, that Puig lacked authority to contract on behalf of Universal Group, but we have "repeatedly held that an issue not raised in the district court and raised for the first time in an appeal will not be considered by this court." Access Now, Inc. v. Sw. Airlines Co., 385 F.3d 1324, 1331 (11th Cir. 2004) (internal quotation marks omitted).

We **AFFIRM** the summary judgment in favor of Coca-Cola.