Klingensmith, J.
Appellant Wells Fargo Bank, N.A. (“Bank”) appeals the involuntary dismissal of its foreclosure case against appellee Mara Elizabeth Eisenberg (“Borrower”). The trial court based' the dismissal on Bank’s failure to adequately prove damages. Bank alleges two grounds for reversal: 1) that the trial court erred by preventing Bank from admitting into evidence the portion of the loan payment history initially generated by the first servicer, which Bank incorporated into its own business records; and 2) that the court’s involuntary. dismissal was improper since' Bank prima, facie established the amounts due and owing, even though the portion of the payment history showing the date on which Borrower was alleged to have initially defaulted was not admitted into evidence. We agree on both issues, and reverse and remand for further proceedings.
Bank filed a mortgage foreclosure complaint against Borrower, alleging that “the payment due for December 1, 2008 and all subsequent payments have not been made.” The complaint claimed that the “principal sum of $101,098.78” along with other expenses were due and owing.
Borrower’s loan was initially serviced by First Union Mortgage Corporation, which later merged into Wachovia; subsequently, Wachovia merged into Bank. At trial, Bank called a loan verification analyst to testify that Bank- was the servicer of Borrower’s loan, and that she had become familiar with Bank’s “policies and procedures related to the preparation and maintenance of business records” during her career with Bank. Although she had not worked for Wachovia, she was familiar with its recordkeeping procedures; however, she was not familiar with First Union’s procedures.
When Bank attempted to admit Borrower’s complete payment history into evidence, Borrower’s counsel objected due to the-witnesses insufficient kiiowledge of the policies and procedures of First Union and Wachovia. The court sustained the objection, but allowed further questioning to elucidate the witness’s knowledge of Bank’s boarding process, After the witness did so, Borrower stood by her prior objection, contending that the payment history should be excluded because the witness could not attest to the policies and procedures of the initial servicer. The court *520 agreed and sustained Borrower’s objection for failing to lay a proper foundation in terms of the witness’s knowledge of how First Union created its records while it was the servicer of the loan.
Once Bank’s merger document with Wa-chovia was admitted as evidence, Bank entered into evidence without objection the payment history starting from Wachovia’s servicing of the loan (beginning in March 2010) onward. Bank also entered into evidence without objection a payoff screen-shot from its records showing all the amounts due and owing, including the principal balance that Bank alleged Borrower owed in the foreclosure complaint ($101,098.78), the escrow advance, accrued interest, and per diem interest. The screenshot also specified that this principal amount was originally due on December 1, 2008.
Borrower moved for involuntary dismissal, arguing that Bank failed to prove standing and did not present competent evidence of the amount owed on the note. Borrower argued that the accuracy of the payment history could not be ensured because the first default date alleged in the complaint was for December 2008, but the admitted payment history began in March 2010. Bank countered that that there was sufficient evidence of the amounts due and owing, but alternatively suggested that, to the extent the court believed it was necessary to have the payment history reach the initial default date, it was willing to reduce the amount it was seeking to only those sums reflected in the payment history in evidence (i.e., from March 2010).
The trial court denied involuntary dismissal on the standing issue, but granted it for failure to prove the amounts due and owing. It ruled that Bank “failed to demonstrate by substantial competent evidence the amount due and owing” because of an “an incomplete payment history.” The court further stated that there was “no definitive date that was testified to in terms of when the actual default occurred.” After Bank’s motion for rehearing was denied, this appeal followed.
The Prior Loan History
“The standard of review for admissibility of evidence is abuse of discretion, limited by the rules of evidence.” Ocwen Loan Servicing, LLC v. Gundersen, 204 So.3d 530, 533 (Fla. 4th DCA 2016) (quoting Tengbergen v. State, 9 So.3d 729, 736 (Fla. 4th DCA 2009)). “[T]he question of whether evidence falls within the statutory definition of hearsay is a matter of law, subject to de novo review.” Id. (quoting Burkey v. State, 922 So.2d 1033, 1035 (Fla. 4th DCA 2006)).
Bank asserts that it laid the proper foundation for admission of Borrower’s complete payment history by way of the analyst’s testimony about Bank’s boarding procedures and verification process. In sustaining Borrower’s objection, the trial court reasoned that it was interpreting this court’s holding in Bank of New York v. Calloway, 157 So.3d 1064 (Fla. 4th DCA 2015), to mean “that it’s not just the boarding process and that whole reliability, accuracy, auditing, verification process but we’re still dealing with the part of the evidence rule concerning laying a foundation in terms of how these records are created.” On that point, it appears that the court took an exceedingly narrow view of our holding in Calloway, and should have admitted the precluded portion of the payment history.
In Calloway, the bank attempted to introduce the payment history and transaction dates from the current servicer’s computer system, but since the payment history derived from documents transferred from a prior servicer and the testifying employee of the current servicer *521 lacked familiarity with the prior servicer’s practices and procedures, the trial court excluded those documents. Id. at 1067-69. We reversed, holding that the witness’s .testimony regarding how the current ser-vicer reviewed the payment histories for accuracy before integrating them into its own records established sufficient trustworthiness of the prior servicer’s documents. Id. at 1072; see also Deutsche Bank Tr. Co. Ams. v. Frias, 178 So.3d 505, 508 (Fla. 4th DCA 2015) (reversing trial court’s preclusion of records originating from prior servicers because although current servicer’s testifying employee had not worked for any prior servicers, employee adequately established that the prior servicers’ records met the business records exception and were checked for accuracy by current servicer).
As we clarified in Gundersen:
“Where a business takes custody of another business’s records and integrates them within its own records, the acquired records are treated as having been ‘made’ by the successor business, such that both records constitute the successor business’s singular ‘business record.’” Bank of N.Y. v. Calloway, 157 So.3d 1064, 1071 (Fla. 4th DCA 2015). “[T]he authenticating witness need not be ‘the person who actually prepared the business records.’” Cayea v. CitiMortgage, Inc., 138 So.3d 1214, 1217 (Fla. 4th DCA 2014) (quoting Cooper v. State, 45 So.3d 490, 492 (Fla. 4th DCA 2010)). As such, it is not necessary to present a witness who was employed by the prior servicer or who participated in the boarding process. See Nationstar Mortg., LLC v. Berdecia, 169 So.3d 209, 213-14 (Fla. 5th DCA 2015); Le v. U.S. Bank, 165 So.3d 776, 778 (Fla. 5th DCA 2015). Rather, the records of a prior servicer are admissible where the current note holder presents testimony that it “had procedures in place to check the accuracy of the information it received from the previous note holder.” Holt v. Calchas, LLC, 155 So.3d 499, 506 (Fla. 4th DCA 2015). The testifying witness “just need[s][to] be well enough acquainted with the activity to provide testimony.” Cayea, 138 So.3d at 1217. “Once this predicate is laid, the burden is on the party opposing the introduction to prove the untrustworthiness of the records.” Love v. Garcia, 634 So.2d 158, 160 (Fla.1994).
204 So.3d at 533-34 (alterations in original).
Here, the trial court abused its discretion by excluding the payment records Bank sought to introduce into evidence. The analyst testified in considerable detail how Bank utilized a two-step process to board a loan. The first step, after a purchase, acquisition, or merger, was for Bank to take the electronic information from the transferring entity and match it up with other corresponding information received from them. Upon confirmation that the information matched, Bank uploaded the information into its servicing system. Within that system there were “additional checks and balances” to ensure the information would “service correctly,” including accuracy checks of the property address, the name, the origination dates, and the principal balance at the time of the acquisition. This additional “testing” was performed before the loan became active within Bank’s system.
The second step of the process was to send a “welcome letter” to the borrower explaining that Bank was the new servicer, with directions to call Bank if there were any issues with the payments or if the borrower thought any information was incorrect.
The analyst explained that Bank determined the trustworthiness of the records it *522 obtained from prior servicers once the acquisitions departments ensured their accuracy, and that these records were inputted into-Bank’s records once they were verified. She explained that while Bank could not verify a prior servicer’s processing and procedures in their entirety, Bank’s review was based on verifying that the number of payments, loan balance, interest rate, and due dates as originally provided by the prior servicer matched those contained in the actual loans acquired. If the numbers did not match, Bank would have the prior servicer review the ■ information for correctness.
This testimony demonstrated the analyst’s'familiarity with the boarding process and how the records were created, as well as the trustworthiness of the documents and information accepted from the prior servicer. Thus, the testimony demonstrated sufficient knowledge of the accuracy of the records and satisfied the requirements for admitting the complete payment history under the business records exception to hearsay.
Involuntary Dismissal
The standard of review for an order granting a motion for involuntary dismissal is de novo. Deutsche Bank Nat’l Tr. Co. v. Huber, 137 So.3d 562, 563 (Fla. 4th DCA 2014). “An involuntary dismissal or directed verdict is properly éntered only when the evidence considered in the light most favorable to the non-moving party fails to establish a prima facie case on the non-moving party’s claim.” McCabe v. Hanley, 886 So.2d 1053, 1055 (Fla. 4th DCA 2004) (quoting Hack v. Estate of Helling, 811 So.2d 822, 825 (Fla. 5th DCA 2002)). We can affirm an involuntary dismissal “only where no proper view of the evidence could sustain a verdict in favor of the nonmoving party.” Green Tree Servicing LLC v. Sanker, 204 So.3d 496, 497 (Fla. 4th DCA 2016). (quoting Huber, 137 So.3d at 563-64).
In seeking reversal, Bank relies on Deutsche Bank National Trust Co. v. Baker, 199 So.3d 967, 968 (Fla. 4th DCA 2016). There, Deutsche Bank, through the current servicer’s loan payment history, established the principal balance of the loan that was originally taken from the prior servicer’s records. Id. at 969. As the prior servicer’s records were not admitted, the trial court admitted the current servi-cer’s loan payment history into evidence over the defense objection “without prejudice” against defense counsel to argue the issue regarding the starting principal balance. Id. Thereafter, the trial court dismissed the foreclosure action based on Deutsche Bank’s supposed “failure] to present reliable evidence of damages.” Id. This, court reversed, concluding that “Deutsche Bank did present a prima facie case, albeit one based upon erroneously admitted evidence of damages.” Id. As we explained:
Where a foreclosure plaintiff presents .evidence of the amount of damages under the loan, there is sufficient prima facie evidence of damages to preclude an involuntary dismissal, even if the evidence of damages was based on inadmissible hearsay that was erroneously admitted at trial. See Beauchamp v. Bank of New York, 150 So.3d 827, 829 n.2 (Fla. 4th DCA 2014) (reversing and remanding for further proceedings to determine the amount due under the note, rather than reversing for a dismissal, where “the Bank established the amount of indebtedness through witness testimony, even though that testimony concededly was inadmissible hearsay”); Peuguero v. Bank of Am., N.A., 169 So.3d 1198, 1203-04 (Fla. 4th DCA 2015) (reversing for a determination of the correct amount owed, rather than reversing for *523 a dismissal, where the Bank’s loan payment history reflected the amount of principal, but the only evidence of the amount of interest came from a witness who merely testified that the amount written on an unadmitted proposed final judgment was correct); but compare Wolkoff v. Am. Home Mortg. Servicing, Inc., 153 So.3d 280, 281-82 (Fla. 2d DCA 2014) (reversing for dismissal where the plaintiff failed to produce any evidence, admissible or not, supporting the amount of indebtedness).
Id. at 968-69.
Along similar lines, this court reversed a trial court’s involuntary dismissal in Bayview Loan Servicing, LLC v. Del Lupo, 208 So.3d 97, 97-98 (Fla. 4th DCA 2017), where a payment history showing the principal amount due was admitted into evidence, even though' the witness failed to confirm or interpret the payment history. We held that “[w]hen considered in the light most favorable to Bayview, this evidence was sufficient to establish a prima facie case on damages. Having admitted Bayview’s proof of damages, albeit in a form not easily comprehensible, the trial court should not have granted appellees’ motion for involuntary dismissal.” Id.; see also Wachovia Mortg., F.S.B. v. Goodwill, 199 So.3d 346, 348 (Fla. 4th DCA 2016) (remanding for further proceedings because “[t]he payment history and testimony of [the bankj’s witness were sufficient to present a prima facie case on damages and withstand involuntary dismissal”); Lasala v. Nationstar Mortg., LLC, 197 So.3d 1228, 1230 (Fla. 4th DCA 2016) (stating that an admitted. loan payment history provides “some evidence the trial court can use to support a judgment on the principal amount owed”).
Here, the payoff screenshot in evidence showed all the amounts due . and owing, including the principal balance of $101,098.78, the escrow advance, accrued interest, and per diem interest, and that the principal amount was originally due on December 1, 2008. The analyst’s testimony confirmed that the information in the screenshot was created by Bank’s servicing platform based on many different records within the platform, including the payment history. The analyst based her testimony about the principal balance on the screenshot in evidence, which would have also been verified by the payment history records had they been admitted.
When considered in the light most favorable to Bank, the evidence regarding the incomplete payment history was sufficient to establish a prima facie case on damages. Having admitted that evidence, the trial court erred by granting Borrower’s motion for involuntary dismissal. Accordingly, we reversé the entry of the involuntary dismissal and remand this case for further proceedings consistent with this opinion.

Reversed and Remanded with instructions.

Damoorgian and Gerber, JJ,, concur.